# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| JOHN ADAM KOZAK | ) | Case No. 24-04051-5-PWM |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| DWAYNE AND KAREN P. AYERS, CHRIS AND DANIELLE BOUKEDES/LONE PALM LLC, JUSTIN AND SARAH-MARGARET CHURCH, ARRINGTON AND COURTNEY DRIVER, CHADWICK FRYE/FRYE PROPERTY, LLC, LYNDSEY AND CHRISTOPHER GIBSON/RHOBACK PROPERTIES, LLC, JESSICA AND DAVID GORDON/SUNKISSED NC, LLC, MASON GOSSE/MARSHALL LANE DESIGN & INTERIOR LLC, BRIAN HARDWICK/HARDWICK NC PROPERTIES, LLC/SPF603 LLC, DENNIS AND ERIN HICKS, JOHN AND NIKKI HUEBNER/HUEBNER REALTY PROS LLC, BENJAMIN KOBERNA, JOSEPH AND CHRISTINE LONGO, SONYA AND DAVID MASON, GLENN AND MATTHEW AND KIMBERLY MCKINNEY, LORI AND BARRY PRY, CARI RABINOWITZ, SARAH AND ANDRE RANADIVE, JUSTIN AND TONYA SCIRANKO, JEFF AND DEBBIE VANDEVEN, MATTIE AND ROBERT WALKER, DONNIE AND MELISSA WILLIAMS/AT LAST 3, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Pro. No. 25-00145-5-PWM |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ADAM KOZAK, | ) | |
| | ) | |
| Defendant. | ) | |

WBD (US) 4936-7244-1488

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Dwayne and Karen P. Ayers, Chris and Danielle Boukedes/Lone Palm LLC, Justin and Sarah-Margaret Church, Arrington and Courtney Driver, Chadwick Frye/Frye Property, LLC, Lyndsey and Christopher Gibson/Rhoback Properties, LLC, Jessica and David Gordon/Sunkissed NC, LLC, Mason Gosse/Marshall Lane Design & Interior LLC, Joyce Hamilton, Brian Hardwick/Hardwick NC Properties, LLC/Spf603 LLC, Dennis and Erin Hicks, John and Nikki Huebner/Huebner Realty Pros LLC, Benjamin Koberna, Joseph and Christine Longo, Sonya and David Mason, Matthew and Kimberly McKinney, Lori and Barry Pry, Cari Rabinowitz, Sarah and Andre Ranadive, Justin and Tonya Sciranko, Jeff and Debbie Vandeven, Mattie and Robert Walker, and Donnie and Melissa Williams/At Last 3, LLC (the "Plaintiffs" or "Homeowners"), though its undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion for Judgment on the Pleadings against John Adam Kozak ("Defendant") and states:

### INTRODUCTION

Plaintiffs are each owners of vacation homes on the coast of North Carolina. Each Plaintiff hired Defendant, John Kozak, and his company, Stellar Beach Realty and Rentals, LLC, to manage those homes as vacation rentals. In the course of that management, Plaintiffs entrusted Defendant with hundreds of thousands of dollars that represented proceeds from the rentals of the Plaintiffs' respective vacation homes. Over the course of multiple months, including between February 2024 and October 2024, Defendant, as a fiduciary to Plaintiffs, drained those funds from Stellar Beach's escrow and operating accounts and diverted them for the benefit of himself and/or for the benefit of his other business endeavors. Having drained the company's escrow account and operating

2

account, Stellar Beach ceased operations, dissolved, and Defendant filed for relief under chapter 7 of the Bankruptcy Code. Each Plaintiff has filed a claim in the underlying bankruptcy proceeding.

Plaintiffs filed the instant adversary proceeding on July 30, 2025 seeking a determination of nondischargeability of their claims under 11 U.S.C. § 523(a), alleging the indebtedness was incurred as the result of actual fraud, fraud or defalcation while acting in a fiduciary capacity, embezzlement, and willful and malicious injury. By the complaint and Defendant's answer, it has been established as a matter of law that Plaintiffs claims are nondischargeable as debts incurred by the Defendant by fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).

Despite the undisputed facts, Defendant erroneously declares that he had no duty to protect the millions of dollars he held in trust for Stellar Beach's clients. The pleadings show otherwise. They establish that he was the sole owner, manager, and decision-maker of Stellar Beach, that he controlled access to the bank accounts, that he directed the transfers from those accounts to himself or others, and that he benefited from the transfers. As such, Defendant owed a fiduciary duty to the Plaintiffs and breached that duty when he funneled Plaintiffs' funds out of the company's escrow account with the conscious disregard of the unjustifiable risk that doing so breached a fiduciary duty, and the same resulted in tens of thousands of dollars of damages to the Plaintiffs. Therefore, Plaintiffs request the Court enter judgment on the pleadings against the Defendant and declare the indebtedness owed to Plaintiffs nondischargeable for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).

## LEGAL STANDARD

Rule 12(c) provides, in relevant part, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c);

Fed. R. Bankr. P. 7012. Though a motion brought under Rule 12(c) is separate and distinct from a motion to dismiss brought under Rule 12(b)(6), the effect and standard of review are identical.

> A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) may be granted "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. . . . The standard of review for a 12(b)(6) and a 12(c) motion is nearly the same . . . with the real difference being that on a 12(c) motion, the Court considers the [a]nswer as well as the [c]omplaint.

*Garcia–Contreras v. Brock & Scott, PLLC*, 775 F.Supp. 2d 808, 817 (M.D.N.C. 2011) (internal citations omitted).

Judgment on the pleadings is "appropriate when the court looks only at the pleadings and determines that there is no issue as to a material fact and only matters of law remain." *In re Sours*, 350 B.R. 261 (Bankr. E.D.V.A. 2006) (citing *Old Bridge Estates Cmty. Ass'n v. Lozada* (*In re Lozada*), 214 B.R. 558, 560 (Bankr.E.D.Va.1997). A motion for judgment on the pleadings shall be granted when "it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." *Shooting Point, L.L.C. v. W.M. Cumming*, 238 F.Supp.2d 729, 735 (E.D.Va.2002). "In considering a motion for judgment on the pleadings, court accepts as true all well-pleaded allegations and views the [pleadings] in the light most favorable to the non-moving party, but the court need not accept as true the legal conclusions set forth . . . ." *Hencely v. Fluor Corporation*, 120 F.4th 412, 431 (4th Cir. 2024).

## **ARGUMENT**

11 U.S.C. § 523(a)(4) provides, in relevant part, that "discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). To show a debt applies under § 523(a)(4) in this Circuit, "a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt

4

arose from the debtor's fraud or defalcation. *In re Strack*, 524 F.3d 493, 497 (4th Cir. 2008) (citing *Pahlavi v. Ansari* (*In re Ansari*), 113 F.3d 17, 20 (4th Cir.1997)).

### I. DEFENDANT'S FAILURE TO PROPERLY DENY MATERIAL ALLEGATIONS RESULTS IN BINDING ADMISSIONS UNDER FED. R. CIV. P. 8(B)(6).

Fed. R. Civ. P. 8(b) provides, in relevant part, in responding to a pleading, a party must: admit or deny the allegations asserted against it by an opposing party[, that] a denial must fairly respond to the substance of the allegation[, that] a party who intends in good faith to deny only part of an allegation must admit that part that is true and deny the rest[, and that] an allegation . . . is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(1),(2),(4), and (6).

Essentially, a Defendant must admit, deny, admit in part and deny in part, or state lack of knowledge or information to form a sufficient belief. *Donnelly v. Frank Shirey Cadillac, Inc.*, 2005 WL 2445902, at *3 (N.D. Ill. Sept. 29, 2005) ("[I]t is Defendant's obligation to answer the complaint with one of the three permissible responses set out in Rule 8(b)."). "Under Rule 8, when a defendant fails to file an answer that neither admits nor denies a material allegation plead within a plaintiff's complaint, that fact will be deemed admitted by the court." *Mullinex v. John Crane Inc.*, 2022 WL 16814885, at *3 (E.D.V.A. 2022); see also 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1264 (3d ed.). Indeed, Courts in the Fourth Circuit have enforced the requirements of Rule 8 in similar contexts. *Mullinex,* 2022 WL 16814885, at *3 (granting Plaintiff's motion for judgment on the pleadings where material allegations neither admitted nor denied were found to be undisputed and thus true).

Our own district court has emphasized the provisions of Rule 8 and their necessity as a "roadmap" for the case through discovery and trial. *Edwards v. CSXT Transportation, Inc.*, 338

F.R.D. 590, 594 (E.D.N.C. 2021). Because an admitted allegation is conclusively resolved and denied allegation is flagged for a disputed matter needing resolution, a party "must choose one of the options authorized by the Rules." *Id.* "Attempts to avoid admitting or denying an allegation by claiming that it contains a legal conclusion, that a document speaks for itself, **or similar evasive responses** are inappropriate. *Id.* (citing *Martinez v. Naranjo*, 328 F.R.D. 581, 599 (D.N.M. 2018); *Kegerise v. Susquehanna Twp. Sch. Dist.*, 321 F.R.D. 121, 124 (M.D. Pa. 2016); *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001); *Controlled Env't Sys. v. Sun Process Co., Inc.*, 173 F.R.D. 509, 510 (N.D. Ill 1997)).

Throughout the answer, Defendant fails to admit or deny allegations in whole or in part by generally denying wrongdoing. Under Rule 8(b) these denials are wholly ineffective and must be taken as admissions. This is not only because Defendant fails to deny the facts alleged, but he also fails to, in good faith, admit the parts of the allegations that are true. Defendant's final general denial of "any and all allegations of the complaint not specifically admitted herein" similarly runs afoul of the strict requirements of Rule 8(b).

## II. THERE IS NO ISSUE OF MATERIAL FACT AS TO WHETHER THE DEBT AROSE WHILE THE DEFENDANT WAS ACTING IN A FIDUCIARY CAPACITY.

"Fiduciary," as used in the bankruptcy code is a term of art, which refers only to trust-like relationships. See *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 334, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Hamby v. St. Paul Mercury Indem. Co.*, 217 F.2d 78, 80 (4th Cir. 1954). These relationships fall under "express" or "technical" trusts. Whether or not an express trust exists depends on the substance of the debtor-creditor relationship evaluated under the applicable state law of trusts. Whether a technical trust exists is a matter of the substance of the parties' relationship. *Davis*, 293 U.S. at 333, 55 S.Ct. 151; see also *Republic of Rwanda v. Uwimana* (*In*

6

re Uwimana), 274 F.3d 806, 811 (4th Cir.2001) (applying § 523(a)(4) to an ambassador); *Andy Warhol Found. for Visual Arts, Inc. v. Hayes* (*In re Hayes*), 183 F.3d 162, 167–168 (2d Cir.1999) (attorney handling client funds); *Pahlavi v. Ansari* (*In re Ansari*), 113 F.3d 17, 20 (4th Cir.1997) (financial advisor); *Hamby v. St. Paul Mercury Indem. Co.*, 217 F.2d 78, 80 (4th Cir.1954) (real estate agent handling closing funds).

For technical trusts, what matters is whether the debtor voluntarily accepted trust-like obligations with respect to his putative beneficiary. "In analyzing the reality of the debtor's putative trust obligations, it is appropriate to consider the impact of state-law created obligations, voluntarily accepted by the debtor." *In re Cobham*, 551 B.R. 181, 194 (E.D.N.C. 2016) (citing *Ansari*, 113 F.3d at 20; *Am. Bankers Ins. Co. v. Maness*, 101 F.3d 358, 363 (4th Cir.1999); *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 208–09, 11 L.Ed. 236 (1844) (noting the obligations voluntarily accepted by debtor owed to her creditor is the determinative consideration).

In the context of a property owner and property manager arrangement, *Honig v. Vinson Realty Co., Inc.* established that, where a property manager's duties involved accounting for money belonging to a real property owner, a fiduciary relationship exists. 98 N.C. App. 392, 294; 390 S.E. 2d 744, 745 (1990). North Carolina courts have similarly, and consistently, found technical trusts to exist between directors of corporations when they held property for the benefit of stockholders and creditors. See *Underwood v. Stafford*, 270 N.C. 700, 702, 155 S.E.2d 211 (1967); *Pender v. Speight*, 159 N.C. 612, 615, 75 S.E. 851 (1912); *Meiselman v. Meiselman*, 58 N.C. App. 758, 775, 295 S.E. 2d 249 (1982), aff'd as modified, 309 N.C. 279, 307 S.E.2d 551 (1983). Property management relationships fall within the scope of fiduciary duties applicable to any other real estate professional or director of a corporation that holds property for the benefit of another in their capacity as a real estate professional or director.

WBD (US) 4936-7244-1488

Here, Plaintiffs have alleged that Defendant's duties involved accounting for funds belonging to Plaintiffs and that Defendant did in fact hold funds belonging to Plaintiffs. In his answer, Defendant admits ownership of Stellar Beach (¶31); that he made business decisions as owner (¶ 32); that Stellar Beach performed property management and rental duties including "collect advance payments" and "collect and remit rental proceeds to homeowner[s]" . . . less appropriate deductions authorized by the property management agreement with the homeowner" (¶ 34); that the Homeowners entered into property management agreements with Stellar Beach allowing Stellar Beach to rent and manage the Homeowner's homes (¶ 36); that Stellar Beach charged management fees and other fees authorized under the Agreements, that Stellar Beach charged fees consistent with contractual limits (¶ 38); that Stellar Beach acted as property manager pursuant to written agreements (¶ 42); that Stellar Beach collected and received all vacation advance payments, security deposits, rental payments, and fees from rentals under the vacation rental agreements, including those that were to be held in trust on behalf of the Homeowners (¶ 45); that funds were deposited into escrow accounts "as required" (¶ 48); that "under the Agreements and applicable law, escrowed Advance Payments (less earned fees) and Final Payments were held for the benefit of Plaintiffs" (¶ 53)

There is no dispute of material fact as to whether a fiduciary relationship existed between the Defendant and Plaintiffs. Defendant admits to all allegations that collectively show a contractual relationship existed whereby Defendant, as the principal of Stellar Beach, had a duty to, and did in fact, account for money belonging to the Plaintiffs.

Defendant further expressly admits, in his own words, that the funds were held "for the benefit of Plaintiffs." Answer, ¶ 51. Further still, Defendant fails to deny that he had access to, control, and management over Stellar Beach's bank accounts, including the Escrow Account, but

8

only clarifies that those accounts were "under the authority of the [Broker In Charge] and accounting personnel. Answer, ¶ 33. Though Defendant repeatedly denies that he owed a fiduciary duty to the Plaintiffs, denies "any wrongdoing," and pins the responsibility on others, such statements need be rejected and the allegations taken as true by the Court as they are conclusions of law, not denials of fact, and run afoul the requirements of Fed. R. Civ. P. 8 as discussed *infra*.

In sum, fiduciary status under § 523(a)(4) is determined by control and entrustment, not licensing titles. Defendant was the sole owner, manager, and decision maker of Stellar Beach. Defendant controlled access to accounts of Stellar Beach, even if others had authority. The Defendant directed the transfers at issue and benefitted from the same. Defendant's insistence that he owed *no* duty to the Plaintiffs whatsoever (Answer, ¶¶ 40, 43, 58, 102, 104–105, 109, 113, 118, 120, 126, 132, 134, 136–138, 139, 145–154) and that the responsibility belonged to the broker-in-charge alone is nonsensical and incredulous. Defendant's belief that his duties to Plaintiffs were not fiduciary in nature is irrelevant to whether Defendant actually owed a fiduciary duty to Plaintiffs. Defendant cannot evade liability by delegating fiduciary duties to licensed employees while personally exercising dominion over trust funds.

### III. THERE IS NO ISSUE OF MATERIAL FACT AS TO WHETHER THE DEBT AROSE FROM THE DEFENDANT'S DEFALCATION

"Defalcation" is an intentional breach of trust and misappropriation of funds. *Bullock v. Bank Champaign, N.A.*, 569 U.S. 267; 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013). The required "intent" element may be shown by either knowledge of, or gross recklessness in regard to, the improper nature of the relevant fiduciary behavior. *Id.* at 1759–60. Defalcation differs from fraud and embezzlement in that a "defalcation" requires only a "nonfraudulent breach[ ] of fiduciary duty." *Id.* "Actual knowledge of the wrongdoing is not required; rather, defalcation may occur where a fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable

9

risk that his conduct will turn out to violate a fiduciary duty." *In re Jacobs*, 582 B.R. 654, 668 (Bankr. W.D.N.C. 2017) (citing *Bullock*, 569 U.S. at 268). The risk must be of such nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe. *Id.*

In the Complaint, the Plaintiffs allege specific instances in which Defendant intentionally misappropriated escrowed funds:

- Complaint ¶ 60: "[O]n or about March 11, 2024, Defendant transferred $207,981.65 from the Escrow Account into the Operating Account. Then, on or about March 12, 2024, Defendant transferred the same amount, $207,981.55, from the Operating Account to himself or an entity owned or controlled by him."

- Complaint ¶ 61 (a): April 10, 2024: three transfers from the Escrow Account to the Operating Account totaling $104,213.66 followed immediately by four transfers from the Operating Account totaling $98,513.88 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (b): April 12, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $282,361.44 followed immediately by two transfers from the Operating Account totaling $282,361.44 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (c): May 3, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $228,014.44 followed immediately by two transfers from the Operating Account totaling $228,014.44 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (d): May 16, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $11,033.89 followed immediately by one transfer from the Operating Account in the amount of $11,033.89 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (e): May 17, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $31,382.00 followed immediately by three transfers from the Operating Account totaling $27,940.46 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (f): May 24, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $268,084.74 followed immediately by two transfers from the Operating Account totaling $268,000.00 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (g): June 3, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $129,452.00 followed immediately by two transfers from the Operating Account totaling $129,452.00 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (h): June 20, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $42,019.99 followed immediately by two transfers from the Operating Account totaling $40,188.00 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (i): June 21, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $22,011.00 followed immediately by one transfer from the Operating Account totaling $22,011.00 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (j): June 28, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $32,014.88 followed immediately by three transfers from the Operating Account totaling $33,500.00 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (k): July 12, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $38,930.79 followed immediately by two transfers from the Operating Account totaling $29,143.33 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (l): July 19, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $38,094.04 followed immediately by two transfers from the Operating Account totaling $31,519.05 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (m): July 31, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $5,102.33 followed immediately by one transfer from the Operating Account in the amount of $5,100.00 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (n): August 2, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $25,005.08 followed immediately by two transfers from the Operating Account totaling $25,003.08 [to Defendant or entities owned or controlled by Defendant];

- Complaint ¶ 61 (o): August 9, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $30,096.55 followed immediately by three transfers from the Operating Account totaling $31,620.07 [to Defendant or entities owned or controlled by Defendant];

WBD (US) 4936-7244-1488

- Complaint ¶ 61 (p): August 13, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $25,000.00 followed immediately by one transfer from the Operating Account totaling $21,000.00 [to Defendant or entities owned or controlled by Defendant].

- Complaint ¶ 66: "[B]etween February 16, 2024 and August 14, 2024, Defendant transferred $1,951,857.86 from the Escrow Account into the Operating Account and then transferred those funds to himself or to entities he owned or controlled.

In response to each and every one of these allegations, Defendant simply responds "Deny any wrong doing." Defendant does not deny that the transfers discussed in the relevant paragraphs of the Complaint took place, but rather insists that making such transfers do not constitute "wrong doing." As mentioned briefly above, such a response is not in compliance with Fed. R. Civ. P. 8(b). The rule requires a Defendant "admit or deny the allegations asserted against it by an opposing party," that denials "fairly respond to the substance of the allegation," that a party who intends in good faith to "deny only part of an allegation . . . admit that part that is true and deny the rest," and that "an allegation . . . is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(1),(2),(4), and (6).

Rather than honestly make an admission or denial of the facts alleged, Defendant attempts to side-step the allegation with non-response. This does not require any inferential analysis—general denials of wrongdoing are used throughout Defendant's answer in order to avoid perjuring himself and work only to confuse what issues Plaintiffs need prove at trial. Defendant's failure to deny a single transfer in whole or in part is for the purpose of evading admission. Defendant's insistence that the transfers were not "wrong" as a matter of law should be disregarded and each and every factual allegation that is not admitted or denied should deemed admitted as Fed. R. Civ. P. 8(b)(6) requires. By only denying wrongdoing, Defendant has effectively admitted the allegations outlining the improper transfers.

The pleadings also establish that Defendant consciously disregarded or was willfully blind to a substantial and unjustifiable risk that his conduct would violate a fiduciary duty. Defendant, in his own words, expressly "admits that the Agreement required funds to be kept and accounted for in accordance with the NCVRA and other applicable laws" and "admits that the NCVRA and Agreements required funds to be held in trust under a licensed broker." Answer, ¶¶ 102, 127. Defendant expressly admits that the funds held in escrow belonged to Plaintiffs (Answer, ¶54), that he knew he needed to reconcile the escrow account with the amounts owed to his clients, including the Plaintiffs, and could not continue operations without doing so (Answer, ¶ 84), contemplated a sale of Stellar Beach in order to bring in capital to balance the escrow account, reconcile homeowner payments, and maintain operations (Answer, ¶ 89), pursued the sale to secure capital and ensure all homeowner and renter accounts could be balanced (Answer, ¶ 94), and that the escrow account did not hold amounts necessary to reconcile Stellar Beach's books (Answer, ¶ 98). Defendant admits in his own words that he knew he was obligated to keep certain funds in escrow pursuant to the NCVRA and the Agreements, admits that a shortfall had occurred, and admits he made efforts to cure the shortfall.  Each of these admissions establishes that Defendant knew that causing an escrow shortfall would violate a fiduciary duty and Defendant's willful blindness to the substantial and unjustifiable risk that his conduct would violate that duty.

Even further, Plaintiffs allege that "[Roman] Van Dyjk regularly advised Defendant against making the Unauthorized Transfers, specifically advising Defendant that the Unauthorized Transfers were erroneous and that he should not be making the unauthorized Transfers . . . in response to the advice against making these Unauthorized Transfers, Defendant acknowledged the Unauthorized Transfers and assured Van Dyjk he would cover the Unauthorized Transfers." Compl. ¶¶ 69–70.  Again, in response to each of these allegations, Defendant simply responds

13

"Deny any wrong doing." If any doubt remains, Defendant effectively admits that he was made aware by Van Dyjk that the transfers at issue were erroneous and were improper.

Defendant consistently shirks responsibility for accounting practices to Stellar Beach's accounting department and bookkeeper, remarkably stating he had *no* responsibility for *any* of the alleged improper transfers he effectively admits to initiating and yet admits to disregarding his accounting department's and bookkeeper's warnings that the transfers were improper. Defendant even affirmatively admits that Van Dyjk "follow[ed] instructions and procedures in the account system and did not initiate transfers on his own." Answer, ¶ 67. Defendant's answer makes clear that Defendant believed that, because Stellar Beach had a broker-in-charge, he could do as he liked with the Plaintiffs' property without consequence. Defendant has admitted that he initiated the transfers from the Escrow Account into the Operating Account and from the Operating Account into his own account or the accounts of his other business ventures. Defendant admits that there were not sufficient funds in the Escrow Account to cover the amounts belonging to Plaintiffs. And yet, Defendant insists that he committed no wrongdoing because Stellar Beach had a scapegoat – the broker-in-charge who no longer worked for the company.

These allegations, their effective admissions, and Defendant's own affirmative admissions establish that Defendant had the knowledge that his conduct was improper and that he consciously disregarded the same. Defendant does not deny any allegations that give rise to nondischargeability under § 523(a)(4), he only insists that doing all the things that give rise to nondischargeability under § 523(a)(4) are *not wrong*.

### IV. DEFENDANT'S AFFIRMATIVE DEFENSES DO NOT PRESENT ANY ISSUES OF FACT NECESSARY FOR TRIAL

Defendant raises four affirmative defenses: 1) proximate cause, 2) failure to mitigate, 3) breach of contract, and 4) equitable defenses of unclean hands, unjust enrichment, and laches. None of the affirmative defenses, by their very nature, present any questions of fact to be adjudicated at trial. Proximate cause is not a factual inquiry, rather, it is a legal determination of responsibility meant for rejecting remote or trivial actual causes. Failure to mitigate implicates amount of damages, not liability, and is irrelevant to the relief requested. Whether Plaintiffs breached their contract with the Defendant is similarly irrelevant to the requested relief. The equitable defense of unjust enrichment also implicates amount of damages. The court can easily conclude from the pleadings and judicial notice of the timing of this suit that laches has no legal footing. Unclean hands bars only equitable relief and cannot be used as defenses to legal claims. *Food Lion, Inc. v S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228, 42 Collier Bankr.Cas.2d 914 (4th Cir. 2000); Guessford v. Pennsylvania Nat. Mut. Cas. Inc. Co., 918 F.Supp. 2d 453, 469 (M.D.N.C. 2013) (the "defense of unclean hands is only applicable when the plaintiff seeks an equitable remedy."). None of the defenses presented by Defendant preclude the relief requested herein as they are either inapplicable or do not implicate the question of liability or whether the indebtedness of the Plaintiffs is nondischargeable.

## CONCLUSION

Based on the parties pleadings, there is no issue of material fact that Defendant, as the principal and owner of the company engaged to and did in fact manage Plaintiffs' vacation rental properties, collected deposits and rents, and promised to protect those funds until they were paid to Plaintiffs. The pleadings establish that Defendant owed a fiduciary duty to Plaintiffs, that Defendant intentionally breached that fiduciary duty by misappropriating Plaintiffs' entrusted funds. As a result, Plaintiffs are entitled to a nondischargeable judgment against Defendant. The

Court need not reach actual fraud under § 523(a)(2), embezzlement under § 523(a)(4), or willful and malicious injury under § 523(a)(6). Defalcation alone is dispositive of the nondischargeability of Defendant's indebtedness to Plaintiffs.

For the foregoing reasons, Plaintiffs respectfully submit that judgment should be AWARDED to Plaintiffs in the amount sought in Plaintiffs' Complaint, that Plaintiffs judgment should be nondischargeable under 11 U.S.C. § 523(a)(4) and that Plaintiffs should be awarded their reasonable attorneys' fees and costs associated with this action.

Dated:  February 19, 2026            Respectfully submitted,

*/s/ James S. Livermon, III*
James S. Livermon, III
N.C. State Bar No. 26492
Telephone: 919-755-2148
Email: Charlie.Livermon@wbd-us.com
Eudora F. S. Arthur
N.C. State Bar No. 59854
Telephone: 919-755-2178
Email: Dorie.Arthur@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601

*Attorneys for Plaintiffs*

WBD (US) 4936-7244-1488

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 19, 2026, a copy of the foregoing Memorandum of Law in Support of Motion for Judgment on the Pleadings was served on all parties of record via this Court's CM/ECF electronic filing system.

        John Adam Kozak
        308 Arborhill Lane
        Holly Springs, NC 27540

        */s/ James S. Livermon, III*
        James S. Livermon, III

WBD (US) 4936-7244-1488