**SO ORDERED**

**SIGNED this 28 day of April, 2026.**

_____
**Pamela W. McAfee**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

**JOHN ADAM KOZAK,**

      **DEBTOR**

**CASE NO.**
**24-04051-5-PWM**
**CHAPTER 7**

---

**DWAYNE AYERS, KAREN AYERS, CHRIS BOUKEDES, LONE PALM LLC, JUSTIN CHURCH, SARAH-MARGARET CHURCH, ARRINGTON DRIVER, COURTNEY DRIVER, CHADWICK FRYE, FRYE PROPERTY LLC, LINDSEY GIBSON, CHRISTOPHER GIBSON, RHOBACK PROPERTIES LLC, JESSICA and DAVID GORDON, SUNKISSED NC, LLC, MASON GOSSE, MARSHALL LANE DESIGN & INTERIOR LLC, JOYCE HAMILTON, BRIAN HARDWICK, HARDWICK NC PROPERTIES, LLC, SPF603 LLC, DENNIS HICKS, ERIN HICKS, JOHN and NIKKI HUEBNER, HUEBNER REALTY PROS LLC, BENJAMIN KOBERNA, JOSEPH LONGO, SONYA and DAVID MASON, MATTHEW and KIMBERLY MCKINNEY, LORI and BARRY PRY, CARI RABINOWITZ, SARAH and ANDRE RANADIVE, JUSTIN SCIRANKO, TONYA SCIRANKO, JEFF and DEBBI VANDEVEN, MATTIE WALKER, ROBERT WALKER, DARNELL WILLIAMS, III, MELISSA WILLIAMS, AT LAST 3, LLC,**
      **PLAINTIFFS,**

      **v.**

**JOHN ADAM KOZAK,**
      **DEFENDANT.**

**ADV. PRO. NO.**
**25-00145-5-PWM**

**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**

The matter before the court is the motion filed by the plaintiffs, Dwayne and Karen P. Ayers, Chris and Danielle Boukedes/Lone Palm LLC, Justin and Sarah-Margaret Church, Arrington and Courtney Driver, Chadwick Frye/Frye Property, LLC, Lyndsey and Christopher Gibson/Rhoback Properties, LLC, Jessica and David Gordon/Sunkissed NC, LLC, Mason Gosse/Marshall Lane Design & Interior LLC, Brian Hardwick/Hardwick NC Properties, LLC/Spf603 LLC, Dennis and Erin Hicks, John and Nikki Huebner/Huebner Realty Pros LLC, Benjamin Koberna, Joseph and Christine Longo, Sonya and David Mason, Matthew and Kimberly McKinney, Lori and Barry Pry, Cari Rabinowitz, Sarah and Andre Ranadive, Justin and Tonya Sciranko, Jeff and Debbie Vandeven, Mattie and Robert Walker, and Donnie and Melissa Williams/At Last 3, LLC (collectively, Plaintiffs), for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (made applicable in this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure) against defendant John Adam Kozak, as supported by their memorandum of law. D.E. 20, 21. A hearing on the motion was conducted in Raleigh, North Carolina on March 19, 2026, at the conclusion of which the court took the matter under advisement. For the reasons that follow, the motion will be denied.

**PROCEDURAL BACKGROUND**

John Adam Kozak filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on November 20, 2024. The Plaintiffs each filed individual proofs of claim in the bankruptcy case, and jointly filed the complaint in this adversary proceeding on July 30, 2025, seeking a determination that their individual claims against Mr. Kozak are excepted from discharge under 11 U.S.C. § 523(a)(2)(A) (debt for money obtained by actual fraud, false pretenses, or representations); § 523(a)(4) (debt for fraud or defalcation while acting in a fiduciary capacity and

2

for embezzlement); and § 523(a)(6) (debt for willful and malicious injury to property). D.E. 1. Mr. Kozak, who is proceeding in this matter without the assistance of counsel, filed an answer to the complaint on September 30, 2026, an amended answer on November 5, 2025, and a second amended answer on December 12, 2025. D.E. 8, 13, 18.

In their motion, the Plaintiffs seek a determination that the pleadings establish as a matter of law that the debts owed by Mr. Kozak to the Plaintiffs were incurred through fraud or defalcation while acting in a fiduciary capacity as contemplated by § 523(a)(4).[1] Mr. Kozak contends that the pleadings do not establish that he was acting in a fiduciary capacity with respect to the Plaintiffs, that the motion must be denied, and that all claims should proceed to discovery.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 1409(a). This is a statutorily core proceeding under 28 U.S.C. § 157(b)(1) that this court is authorized to hear and determine. The United States District Court for the Eastern District of North Carolina has referred this case and this proceeding to this court under 28 U.S.C. § 157(a) by its General Order of Reference entered on August 3, 1984. This proceeding is constitutionally core, and this court may enter final orders herein.

## GENERAL ALLEGATIONS OF THE COMPLAINT

Mr. Kozak formed Stellar Beach Realty and Rentals, LLC (Stellar Beach Realty) in August 2016. Stellar Beach Realty was in the business of managing vacation home rentals in several beach towns in Brunswick County, North Carolina: Holden Beach, Ocean Isle Beach, and Sunset Beach. Mr. Kozak was the entity's sole owner and member, making its major business decisions. Mr. Kozak is not, and has never been, a licensed real estate broker. Instead, Stellar Beach Realty held

---

[1] This is the sole claim on which the Plaintiffs seek judgment as a matter of law. They concede that the amount of the debts has not been established with certainty through the pleadings.

a real estate broker license, and it employed several brokers licensed by the North Carolina Real Estate Commission, including one who acted as a statutorily required broker-in-charge. Stellar Beach Realty also employed a bookkeeper who monitored the business's accounts, including an escrow account that held money in trust for clients and an operating account.

Stellar Beach Realty managed vacation rental properties for the owners of those properties, including the Plaintiffs. In this capacity, Stellar Beach Realty marketed the properties to prospective renters, entered into vacation rental agreements with renters, and collected payments, fees, and taxes from renters. Stellar Beach Realty was also responsible for cleaning the properties between bookings, repairing the properties, delivering accountings of the rentals to the homeowners, and remitting rental proceeds to the homeowners after the appropriate fees were deducted. Under the property management agreements signed by Stellar Beach Realty and the homeowners, the homeowners agreed to pay Stellar Beach Realty a property management fee ranging from 18% to 20% of the gross amount received for the booking of each rental. Depending on the specific contractual language of the management agreements, these management fees were either earned when a rental was booked by a renter or when the renter checked into the rental. Stellar Beach Realty was required to remit the collected rental proceeds, less appropriate deductions, to the homeowners on the 15th of each month following a check-out date. Prior to remittance to the homeowners, the rental proceeds were to be held in trust in the Stellar Beach Realty escrow account.

The Plaintiffs are property owners who contracted with Stellar Beach Realty to manage their vacation rental homes. The Plaintiffs allege that Mr. Kozak usurped rental proceeds that, under the management agreements and applicable state law, belonged to them. According to the Plaintiffs, Mr. Kozak accomplished this by making a series of unauthorized transfers first from the

4

escrow account to the operating account and then from the operating account to himself or to entities wholly or partially owned by him. The Plaintiffs contend that these unauthorized transfers, made without their knowledge or consent, occurred throughout 2024 and totaled $1,951,857.86.

According to the Complaint, Stellar Beach Realty's bookkeeper brought a $969,018 shortfall in the escrow account to the attention of Mr. Kozak in September 2024. Mr. Kozak began to solicit buyers for Stellar Beach Realty in an effort to acquire enough cash to cover the shortfall. When the business went unsold and after the North Carolina Real Estate Commission suspended Stellar Beach Realty's license, Stellar Beach Realty ceased operations around October 2024 with the escrow account shortfall still present. As noted, the Plaintiffs contend that the pleadings establish as a matter of law that Mr. Kozak acted in a fiduciary capacity with respect to them, and that the debts he owed them are for defalcation while acting in that fiduciary capacity such that the debts are excepted from Mr. Kozak's chapter 7 discharge.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that judgment may be entered as a matter of law based solely on the pleadings. A party may move for judgment on the pleadings once the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) may be allowed when "it appears certain" that the non-moving party cannot prove any facts in support of his claims. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999)); *see also Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 817 (M.D.N.C. 2011) ("A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) may be granted 'where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'") (citations omitted); *La Mirada Prods. Co. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y.

5

1993) ("Judgment on the pleadings may be granted only if, on the facts admitted, the moving party is clearly entitled to judgment.") (citations omitted).

Judgment on the pleadings is "not favored." *Lambert v. Inryco, Inc.*, 569 F. Supp. 908, 912 (W.D. Okla. 1982). "In general, 'federal courts have followed a fairly restrictive standard in ruling on motion for judgment on the pleadings.'" *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 256 (S.D.N.Y. 1989) (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1368, at 689 (1969)). When considering a Rule 12(c) motion, the court accepts as true all well-pleaded allegations and views the pleadings in the light most favorable to the non-moving party. *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). However, the court need not accept as true any legal conclusions contained within the pleadings. *See id*. While the standards of review for Rules 12(b)(6) and 12(c) motions are similar, a court considers both the complaint and answer in the context of a Rule 12(c) motion. *Garcia-Contreras*, 775 F. Supp. 2d at 817 (citing *Rinaldi v. CCX, Inc.,* No. 3:05–CV–108–RJC, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008). In other words, when a plaintiff moves for judgment on the pleadings, the court must consider factual statements and defenses presented in the answer in determining whether the plaintiff may prevail as a matter of law.

The court must also consider the sufficiency of admissions and denials under Rule 8 when evaluating a Rule 12(c) motion. Rule 8(b) provides that a party must "admit or deny the allegations asserted against it by an opposing party" when responding to a complaint. Fed. R. Civ. P. 8(b)(1)(B). Denials "must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). If a defendant wishes, in good faith, to deny a portion of an allegation, the defendant "must admit the part that is true and deny the rest." Fed. R. Civ. P. 8(b)(4). In short, a defendant must respond with one of the permissible responses listed in Rule 8(b): admit, deny, admit in part and deny in

part, or state a lack of knowledge or information to form a sufficient belief. *See Donnelly v. Frank Shirey Cadillac, Inc.*, No. 05 C 3520, 2005 WL 2445902, at *3 (N.D. Ill. Sept. 29, 2005). Failure to deny an allegation is deemed an admission unless the allegation relates to the amount of the damages in the case or does not require a responsive pleading. Fed. R. Civ. P. 8(b)(6). An answer in which the defendant "merely state[s] that she 'denies any allegations of wrongdoing'" is insufficient to satisfy Rule 8(b), as it is not a specific denial of a particular allegation in the complaint, nor a general denial. *Kwik-Sew Pattern Company, Inc. v. Gendron*, No. 1:08-CV-309, 2008 WL 4960160, at *1 (W.D. Mich. Nov. 19, 2008).

Bearing these considerations in mind, the court must evaluate whether the Plaintiffs have alleged sufficient facts to determine as a matter of law that Mr. Kozak both had and breached a fiduciary duty to them for purposes of § 523(a)(4), as well as whether Mr. Kozak has denied those facts as contemplated by Rule 8.

### FACTS ESTABLISHED OR CONTROVERTED BY THE PLEADINGS

The court set forth a paraphrased summary of the contentions in this adversary proceeding above, but to evaluate those contentions for purposes of Rule 12(c), some of the specific allegations and the corresponding responsive pleading with respect to those allegations must be considered. Accordingly, the dispositive (for purposes of the motion before the court) allegations of the complaint, D.E. 1, with corresponding responses contained in the second amended answer, D.E. 18, are set forth here:

> 31. From the time of its formation through the Petition Date, Defendant was the sole owner, member and manager of Stellar Beach.
>
> ANSWER. Admit in part and deny in part. Defendant admits ownership but denies having fiduciary responsibilities as manager or broker. All management and fiduciary duties were performed by licensed Brokers, including the Broker-in-Charge (BIC) or Qualifying Broker.

33. At all times relevant to this action, Defendant had access to, control and management over Stellar Beach's bank accounts maintained at Truist Bank, including Stellar Beach's operating account bearing Truist Account No. xxxx0445 (the "Operating Account") and a trust or escrow account maintained at Truist Bank bearing Truist Account No. xxxx3013 (the "Escrow Account").

ANSWER. Admit in part and deny in part. The listed accounts were maintained at Truist Bank. Those accounts were under the authority of the BIC and accounting personnel per Real Estate Commission requirements.

47. All Advance Payments or portions thereof that [were] not earned by Stellar Beach under the express terms of the Agreements belonged to the Plaintiffs and were to be held in the Escrow Account until disbursed by Stellar Beach to the Plaintiffs on the fifteenth (15th) day of the month following the completion of the renters' stay in the Vacation Homes.

ANSWER. Admit in part and deny in part. Defendant admits this represents standard practice under the Agreements. Denies personal control or direction over escrow accounts, which were managed by the BIC and accounting personnel under the Commission's trust account requirements.

48. The Advance Payments were paid by the vacation renters to Stellar Beach and deposited into the Escrow Account.

ANSWER. Admit. Funds were deposited into escrow accounts as required. Defendant denies having individual access to these funds without permission from BIC and accounting staff; escrow management and reconciliation were conducted by the BIC and accounting staff.

49. The remaining fifty percent (50%) due under the vacation rental agreements was due at the time of and before the renters checked into the Vacation Homes, and the renters of each of the Vacation Homes, at all relevant times, in fact did pay to Stellar Beach, as agent for the Plaintiffs, the remaining fifty percent (50%) (the "Final Payment" or "Final Payments") prior to occupying the Vacation Homes.

ANSWER. Admit in part and deny in part. Defendant admits that renters were required to and did pay the remaining fifty percent (50%) prior to occupying the Vacation Homes. Defendant denies any implication that he personally controlled the collection or handling of these funds. All such payments were processed and recorded by Stellar Beach's accounting personnel and the Broker-in-Charge (BIC) or Qualifying Broker in accordance with North Carolina Real Estate Commission rules.

51. Similar to the Advance Payments, the Final Payments paid by renters under the Agreements were deposited in the Escrow Account where they were to be held and

8

remain until the funds were disbursed to the Plaintiffs on the fifteen day of the month following the renters' stay in the Vacation Homes.

ANSWER. Admit in part and deny in part. Defendant admits that Final Payments were to be deposited into the escrow account and held for the benefit of Plaintiffs until disbursed under the Agreements. Minus all accumulated expenses. Defendant denies any wrong doing.

59. Upon information and belief, unbeknownst to Plaintiffs, throughout 2024 Defendant had routinely transferred or caused funds that represented Advance Payments and/or Final Payments to be transferred from the Escrow Account into the Operating Account and then transferred or caused those funds to be transferred out of the Operating Account to himself or to entities wholly or partially owned and/or controlled by Defendant (the "Unauthorized Transfers").

ANSWER. Admit in part and deny in part. Defendant admits transfers occurred between the Escrow and Operating Accounts; however, denies that such transfers were unauthorized or for personal benefit. All transfers would have a memo showing the nature and purpose of the transaction. Defendant denies any wrong doing.

60. For instance, on or about March 11, 2024, Defendant transferred $207,981.65 from the Escrow Account into the Operating Account. Then, on or about March 12, 2024, Defendant transferred the same amount, $207,981.55, from the Operating Account to himself or an entity owned or controlled by him.

ANSWER. Deny any wrong doing.

61. Other instances of transfers by Defendant from the Escrow Account to the Operating Account followed by transfers from the Operating Account to Defendant or entities owned or controlled by the Defendant include:

a. April 10, 2024: three transfers from the Escrow Account to the Operating Account totaling $104,213.66 followed immediately by four transfers from the Operating Account totaling $98,513.88;

b. April 12, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $282,361.44 followed immediately by two transfers from the Operating Account totaling $282,361.44;

c. May 3, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $228,014.44 followed immediately by two transfers from the Operating Account totaling $228,014.44;

d. May 16, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $11,033.89 followed immediately by one transfer from the Operating Account in the amount of $11,033.89;

e. May 17, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $31,382.00 followed immediately by three transfers from the Operating Account totaling $27,940.46;

9

f. May 24, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $268,084.74 followed immediately by two transfers from the Operating Account totaling $268,000.00;

g. June 3, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $129,452.00 followed immediately by two transfers from the Operating Account totaling $129,452.00;

h. June 20, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $42,019.99 followed immediately by two transfers from the Operating Account totaling $40,188.00;

i. June 21, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $22,011.00 followed immediately by one transfer from the Operating Account totaling $22,011.00;

j. June 28, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $32,014.88 followed immediately by three transfers from the Operating Account totaling $33,500.00;

k. July 12, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $38,930.79 followed immediately by two transfers from the Operating Account totaling $$29,143.33;

l. July 19, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $38,094.04 followed immediately by two transfers from the Operating Account totaling $31,519.05;

m. July 31, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $5,102.33 followed immediately by one transfer from the Operating Account in the amount of $5,100.00;

n. August 2, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $25,005.08 followed immediately by two transfers from the Operating Account totaling $25,003.08;

o. August 9, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $30,096.55 followed immediately by three transfers from the Operating Account totaling $31,620.07; and

p. August 13, 2024: one transfer from the Escrow Account to the Operating Account in the amount of $25,000.00 followed immediately by one transfer from the Operating Account totaling $21,000.00.

ANSWER. Deny any wrong doing.

66. Upon information and belief, between February 16, 2024 and August 14, 2024, Defendant transferred $1,951,857.86 from the Escrow Account into the Operating Account and then transferred those funds to himself or to entities he owned or controlled.

ANSWER. Deny any wrong doing.

69. Upon information and belief, Van Dyjk [the bookkeeper] regularly advised Defendant against making the Unauthorized Transfers, specifically advising

10

Defendant that the Unauthorized Transfers were erroneous and that he should not be making the Unauthorized Transfers.

ANSWER. Deny any wrong doing.

70. Upon information and belief, in response to the advice against making these Unauthorized Transfers, Defendant acknowledged the Unauthorized Transfers and assured Van Dyjk he would cover the Unauthorized Transfers.

ANSWER. Deny any wrong doing.

102. Through the Agreements and personal statements made by the Defendant, Defendant represented to Plaintiffs that funds relating to the Vacation Homes would be kept and accounted for in accordance with the Agreement and applicable laws and regulations, including but not limited to the NCVRA.

ANSWER. Deny in part and admit in part. Defendant admits that the Agreements required funds to be kept and accounted for in accordance with the NCVRA and other applicable laws but denies making any personal statements inconsistent with that duty. All communications and representations were made on behalf of Stellar Beach through its licensed Brokers, including the Broker-in-Charge ("BIC") or Qualifying Broker, who held fiduciary duties for escrow compliance. Defendant, not being a BIC or Qualifying Broker, had no fiduciary duties over trust accounts. Defendant denies any wrong doing.

126. A fiduciary relationship existed between each of the Plaintiffs and the Defendant.

ANSWER: Deny. Defendant denies any fiduciary relationship existed. Defendant was not a licensed Broker or Broker-in-Charge and therefore had no fiduciary capacity toward Plaintiffs. Fiduciary obligations rested solely with Stellar Beach's licensed brokers. Defendant denies any wrong doing,

127. The Agreement and NCVRA imposed fiduciary duties on Stellar Beach and Defendant with regard to the Homeowners, including inter alia, the duty to hold all Rental Proceeds and Advanced Payments in trust pursuant to the NCVRA.

ANSWER: Admit in part and deny in part. Defendant admits that the NCVRA and the Agreements required funds to be held in trust under a licensed broker. Defendant denies that he personally held such duties. The BIC or Qualifying Broker maintained responsibility for escrow compliance. Defendant denies any wrong doing,

129. The Agreements were entered into and the fiduciary duties owed by Stellar Beach and Defendant were established before Stellar Beach or Defendant misappropriated any funds belonging to the Plaintiffs.

11

ANSWER: Deny. Defendant denies that he owed or breached any fiduciary duties or misappropriated funds. Defendant denies any wrong doing,

132. Defendant failed to hold Rental Proceeds, Advanced Payments, Final Payments, and unearned management fees in the Escrow Account in accordance with the Agreement and the NCVRA.

ANSWER: Deny. Defendant denies failing to hold funds in escrow as required. Defendant had no fiduciary or operational control of the escrow account. Funds were managed by the BIC in compliance with law. Defendant denies any wrong doing,

134. Defendant consciously disregarded and was willfully blind to a substantial and unjustifiable risk that the Accounting Practices were actively and continuously causing Defendant to breach his fiduciary duties to the Plaintiffs.

ANSWER: Deny. Defendant denies any conscious disregard or willful blindness. Defendant had no fiduciary duties to breach and relied on Stellar Beach's brokers and accounting systems for compliance.

135. Plaintiffs were harmed by Defendant's fraud or defalcation while acting as a fiduciary of the Plaintiffs.

ANSWER: Deny. Defendant denies acting as a fiduciary or engaging in fraud or defalcation. Any alleged harm did not result from Defendant's personal conduct.

D.E. 1, D.E. 18.

## DISCUSSION

Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Although the complaint also includes claims under this section alleging embezzlement, only that portion of this statute involving fraud or defalcation while acting in a fiduciary capacity is at issue in the motion before the court. For a debt to be nondischargeable under this provision of § 523(a)(4), "the parties must share an express or technical trust relationship" and the "the broad, general definition of 'fiduciary' relationship commonly applying under state law as involving just confidence, trust, and good faith is inapplicable." *In re Sorge*, 566 B.R. 369, 377 (Bankr. E.D.N.C. 2017). "[A] 'technical trust,' in

turn, may only be created by agreement between the parties or by a statute that specifically imposes fiduciary obligations." *Id*. at 378 (citing *Ronk v. Maresh (In re Maresh)*, 277 B.R. 339 (Bankr. N.D. Ohio 2001); *Peoples Bank & Trust Co. of Hazard v. Penick (In re Penick)*, 199 B.R. 16 (Bankr. E.D. Ky. 1996).

The fiduciary relationship at issue in this case arises from three sources: North Carolina common law, the agreements between the parties, and the North Carolina Vacation Rental Act (NCVRA), N.C. Gen. Stat § 42A.  Under the common law, a real estate broker has a fiduciary relationship with a client for whom the broker manages property. "[F]ifty years ago, our Supreme Court held that '[t]here is involved in the relation of a real estate broker and a client a measure of trust analogous to that of an attorney at law to his client, or agent to his principal.'" *Sutton v. Driver*, 211 N.C. App., 92, 99, 712 S.E. 2d 318, 323 (2011) (quoting *State v. Warren*, 252 N.C. 690, 695, 114 S.E. 2d 660, 665 (1960)); *see also Spence v. Spaulding & Perkins, Ltd.,* 82 N.C. App. 665, 667, 347 S.E.2d 864, 865 (1986) ("A real estate broker stands in a relation of trust and confidence to his principal. In all matters relating to his agency a broker owes his principals an obligation of utmost fidelity and good faith.") (internal citation omitted).

The NCVRA, which assigns trust accounting rules for vacation rentals to landlords and real estate brokers, "applies to any person . . . or other business entity that acts as a . . . real estate broker engaged in the rental or management of residential property for vacation rental." *See* N.C. Gen. Stat. § 42A-3(a). The trust accounting rules include a requirement that "the . . . real estate broker shall deposit these payments in a trust account in a federally insured depository institution or a trust institution authorized to do business in this State no later than three banking days after the receipt of these payments." N.C. Gen. Stat. § 42A-15. As noted, those rules apply to a real estate broker engaged in management of vacation rental property, with real estate broker defined

13

as "any person . . . or other business entity who for compensation or consideration sells, offers to sell, buys, offers to buy, leases, or offers to lease, rents, or offers to rent any real estate or the improvement thereon, for others." N.C. Gen. Stat. § 93A-2(a). Real estate brokers must be licensed by the North Carolina Real Estate Commission. N.C. Gen. Stat. § 93A-1. A broker-in-charge is a real estate broker "who has been designated as the broker having responsibility for the supervision of brokers on provisional status engaged in real estate brokerage at a particular real estate office and for other administrative and supervisory duties." N.C. Gen. Stat. § 93A-2(a1). Stellar Beach Realty held a real estate broker's license and, according to Mr. Kozak, employed a broker in charge. By statute, Stellar Beach Realty held a duty to maintain certain trust accounts. One of the issues in this case is whether Mr. Kozak also held that duty or is otherwise responsible for any breach of that duty by Stellar Beach Realty.

Finally, the agreements between the Plaintiffs and Stellar Beach Realty, examples of which are attached to the Complaint as Exhibits A (D.E. 1-10) and B (D.E. 1-1), establish a technical trust relationship between Stellar Beach Realty and the Plaintiffs as contemplated by § 523(a)(4). Those agreements (which are not signed by a representative of Stellar Beach Realty) provided that Stellar Beach Realty would hold rental proceeds in escrow, retain a portion of the proceeds designated in the contracts as a management fee, and ultimately remit the remaining proceeds, minus appropriate reductions like the management fee or cleaning fees, to the Plaintiffs at a designated time. Consequently, by agreement, Stellar Beach Realty held a duty to maintain the trust accounts for the benefit of the Plaintiffs, but at issue is whether Mr. Kozak also held that duty or is otherwise responsible for any breach of that duty by Stellar Beach Realty.

**APPLICATION OF LAW TO ADMITTED ALLEGATIONS OF THE COMPLAINT**

The Plaintiffs' Rule 12(c) motion is predicated on Mr. Kozak's insufficiently denying certain key allegations, resulting in binding admissions under Rule 8(b). In response to several allegations that Mr. Kozak was involved in or had knowledge of unauthorized transfers from Stellar Beach Realty accounts to accounts owned by him or his other entities, Mr. Kozak merely stated: "Deny any wrong doing." D.E. 18 at ¶¶ 59-66, 69-70. This response does not comply with Rule 8(b) because, as stated in *Kwik-Sew*, a mere denial of wrongdoing fails to specifically deny the facts alleged, but is instead a characterization of the legal effect of the alleged facts that the court need not accept as true for purposes of rule 12(c). Thus, all responses that state, "Deny all wrong doing" and nothing more do not comport with Rule 8(b) and must be taken as admitted.

However, even with those deemed admissions, Mr. Kozak properly, and specifically, denied two key allegations that are central to the Plaintiffs' claim for non-dischargeability pursuant to § 523(a)(4), giving rise to disputed questions of fact pertaining to Mr. Kozak's role at Stellar Beach Realty and his individual access to its financial accounts that requires denial of the Rule 12(c) motion. First, Mr. Kozak specifically denies being a real estate broker or a broker-in-charge. *See e.g.*, D.E. 18 at ¶ 102. Thus, the statutory and common law fiduciary duties that a real estate broker owes to a client are not directly applicable to Mr. Kozak because he was not a licensed real estate broker, nor are there allegations that he held himself out to be. Similarly, the trust accounting roles prescribed by the NCVRA do not apply to Mr. Kozak for the same reason.

Second, Mr. Kozak specifically denied having individual access to Stellar Beach's escrow and operating accounts. D.E. 18 at ¶ 48. An admission of access and control over the accounts is integral to the success of the Plaintiffs' Rule 12(c) motion because their pleadings are predicated on Mr. Kozak having access and control over the accounts in such a way that would allow him to

divert money from those accounts to himself or related entities. Without an admission of access and control, the Plaintiffs cannot establish their claim based solely on the pleadings. The Plaintiffs, in their reply to Mr. Kozak's response to the Rule 12(c) motion, maintain Mr. Kozak never denied "the funds were transferred into accounts he controlled." D.E. 27 at 5. To support this contention, the Plaintiffs, cite ¶ 33 of the amended answer, suggesting that the allegations within ¶ 33 should be deemed as admitted because his corresponding denial "addresses legal conclusions only." *Id*. at 8. Because the allegations must be construed in the light most favorable to the non-moving party, however, the court does not read Mr. Kozak's denial so narrowly. He specifically denies having authority over the accounts by stating Stellar Beach Realty's broker-in-charge and accounting personnel had the authority, not him. D.E. 18 at ¶ 33. He also specifically denied "having individual access to these funds without permission from [the broker-in-charge] and accounting staff." *Id*. at ¶ 48.

Taken together, and with deference to the disfavored nature of Rule 12(c) motions as well as construing the pleadings in a light most favorable to the non-moving party, Mr. Kozak's assertions that he was not the individual serving in the fiduciary capacity as well as his affirmative statements that he did not have access to or control of Stellar Beach Realty's escrow and operating accounts preclude entry of judgment as a matter of law in favor of the Plaintiffs.

To be clear, Stellar Beach Realty held a real estate broker license and owed fiduciary duties to the Plaintiffs related to the money held in trust for their benefit. Through the property management agreements signed by Stellar Beach Realty and the Plaintiffs, the signatories agreed that Stellar Beach would hold rental proceeds in escrow, retain a portion of the proceeds designated in the contracts as a management fee, and ultimately remit the remaining proceeds, minus appropriate reductions like the management fee or cleaning fees, to the Plaintiffs at a designated

time. Thus, the property management agreements also created a technical trust between Stellar Beach Realty and the Plaintiffs, which, under *Sorge*, establishes a fiduciary relationship between the parties as contemplated by § 523(a)(4). The pleadings also establish through admissions that funds were transferred out of the escrow accounts. However, Stellar Beach Realty is not the debtor in this chapter 7 case, and issues of dischargeability are inapplicable to that entity. Instead, the question is whether Mr. Kozak has an independent fiduciary obligation or otherwise should be held responsible for Stellar Beach Realty's breach of those obligations.

Members of an LLC are generally not personally liable for the debts, obligations, or liabilities of the LLC. *See* N.C. Gen. Stat. § 57D-3-30. To hold a member of an LLC liable for the actions of the LLC, the plaintiff must first pierce the corporate veil. *See Est. of Hurst ex rel. Cherry v. Moorehead I, LLC*, 228 N.C. App. 571, 576, 748 S.E.2d 568, 573 (2013). North Carolina law allows a plaintiff to disregard the corporate form of its opponent when the target corporation is the "mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State." *Id.* at 577, 748 S.E.2d at 573-74 (quoting *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC,* 362 N.C. 431, 440-41, 666 S.E.2d 107, 113-14 (2008) (internal quotemarks and citation omitted)). Here, there are no allegations in the complaint that would allow the court to impose shareholder liability on Mr. Kozak as a matter of law for purposes of the Plaintiffs' motion for judgment on the pleadings.

In summary, and taken as a whole, the pleadings are insufficient to establish as a matter of law that Mr. Kozak individually owed a fiduciary obligation to the Plaintiffs or that there was a basis for him to be held individually liable for the fiduciary breaches of Stellar Beach Realty.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for judgment on the pleadings is DENIED.

**END OF DOCUMENT**